

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-25-00368-CR
_____

THOMAS MCCLENDON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 396th District Court
Tarrant County, Texas[1]
Trial Court No. 1826633, Honorable Vincent Giardino, Presiding

August 11, 2026

MEMORANDUM OPINION

Before DOSS and YARBROUGH and PRATT, JJ.

Appellant, Thomas McClendon, appeals from his conviction for evading arrest or detention with a vehicle.[2] Appellant raises two issues. First, he contends the trial court erred by excluding, as hearsay, testimony about statements he made during a telephone

---

[1] This appeal was transferred to this Court from the Second Court of Appeals pursuant to a docket-equalization order. *See* TEX. GOV'T CODE § 73.001. We apply the precedent of the Second Court of Appeals to the extent it conflicts with our own. TEX. R. APP. P. 41.3.

[2] *See* TEX. PENAL CODE § 38.04.

call as a traffic stop unfolded.  Second, he contends the court erred by admitting two prior evading convictions to impeach him.  We affirm.

## BACKGROUND

On February 18, 2024, Fort Worth police officers received a license-plate alert that a Toyota pickup traveling north on Interstate 35 had been reported stolen out of Abilene. Officers Thomas Hooper and Christian Delgadillo, in separate patrol units, moved in behind the truck.  Officer Hooper activated his overhead lights, then his siren.

Appellant, who was driving the pickup, signaled and pulled onto the shoulder but did not stop.  He continued along the shoulder, exited the freeway, and then accelerated past ninety miles per hour in a sixty-five-mile-per-hour zone.  He wove through traffic and nearly collided with another vehicle.  He stopped only as officers prepared to deploy spike strips.

Appellant was arrested for evading arrest and for unauthorized use of a motor vehicle.  The State dismissed the unauthorized-use charge, and the evading charge proceeded to a jury trial.  As part of its evidence, the State offered dash-camera video from the pursuit and the testimony of the two officers.

Appellant's defense was that he did not know the officers were trying to stop him. To support that theory, he called his friend, Ronnie Cheak, who was speaking with Appellant by telephone during the stop.  The trial court sustained the State's hearsay objection to Appellant's own statements during the telephone call.  Nevertheless, Cheak was allowed to tell the jury that a call took place and that Appellant seemed confused, distracted, and unlike himself.

2

Appellant also testified. He told the jury he did not think he was being pulled over and believed there might be a wreck ahead that the officers were trying to reach. On cross-examination, and over Appellant's objection, the State sought to impeach him with two prior convictions for evading arrest. One conviction was more than ten years old. The record does not establish whether the other, dated June 16, 2014, fell within ten years, but the parties have treated it as being more than a decade old.

The jury found Appellant guilty. At punishment, the State abandoned its habitual-offender notice in favor of a repeat-offender allegation, which Appellant pleaded true. The jury rejected the deadly-weapon allegation and assessed punishment at fifteen years of confinement. This appeal followed.

**ANALYSIS**

<u>Hearsay</u>

Appellant first contends the trial court should have admitted Cheak's testimony about the statements Appellant made during the telephone call as evidence of his state of mind. Appellant concedes the statements were hearsay but argues they were admissible as a present sense impression or an excited utterance. *See* TEX. R. EVID. 803(1), (2). The State responds that neither exception applies and that, as a general rule, a defendant's self-serving declarations are not admissible to prove the facts asserted. *See Allridge v. State*, 762 S.W.2d 146, 152 (Tex. Crim. App. 1988).

We need not resolve whether either exception applies. Assuming without deciding that the trial court erred by excluding the testimony, we hold that any error in excluding the testimony was harmless.

3

The exclusion of Cheak's testimony did not prevent Appellant from presenting his defense, so any error was not of constitutional dimension. *See Walters v. State*, 247 S.W.3d 204, 222 (Tex. Crim. App. 2007). Rule 44.2(b) therefore governs. *See* TEX. R. APP. P. 44.2(b). We independently review the entire record to determine whether Appellant's substantial rights were affected. *Loch v. State*, 621 S.W.3d 279, 282 (Tex. Crim. App. 2021). If the record as a whole gives fair assurance that the error did not influence the jury, or influenced it only slightly, the error does not affect a substantial right. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). In making that assessment, we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and degree of additional evidence supporting the verdict, and (4) whether the State emphasized the error. *Id.* We may also consider the jury instructions, the parties' theories, closing arguments, and voir dire. *Haley v. State*, 173 S.W.3d 510 518–19 (Tex. Crim. App. 2005).

Applied here, the record gives fair assurance that excluding Cheak's testimony did not affect Appellant's substantial rights. Appellant presented his defensive theory to the jury without the excluded statement, arguing that he did not know the officers were pulling him over and thought they might be trying to pass him or reach a wreck ahead. Cheak's testimony reinforced his theory, telling the jury that he was on the phone with Appellant during the stop and that Appellant seemed confused, distracted, and unlike himself. Cheak also acknowledged that Appellant's distraction could have come from evading the police.

4

The jury also heard Appellant's own detailed account of his state of mind, and that account covered the same ground the excluded statement would have. The excluded content pertained to Appellant telling Cheak that he was confused about what the officers were doing. Appellant's own testimony said the same thing, but in far greater detail. He testified that he saw the patrol cars behind him before any lights came on. He said that a siren prompted him to pull onto the shoulder because "I thought they was [sic] pulling me over." Appellant said he became uncertain about the officers' intentions when the lead officer remained in the travel lane; Appellant said he wondered "maybe something was going on, a wreck up there or something, or he was going to pass me." Appellant told the jury he only became certain he was being stopped when the officer moved directly behind him. Whether described by Cheak or by Appellant himself, the subject matter of the excluded statement was independently presented to the jury. The excluded statement therefore added nothing new.

We also note that the excluded statement carried risk for the defense. If the account of the telephone conversation had been permitted as Appellant asked, Cheak would have testified that Appellant also said, "It looks like they might be after me," prompting Cheak to urge him to pull over. To be sure, a jury might have interpreted that exchange as a sign of Appellant's confusion. Or, a jury might just as readily have concluded it showed Appellant's awareness that the officers were pursuing him, followed by a decision not to stop. Because the statement pointed in both directions, its exclusion did not deprive Appellant of clearly favorable evidence.

Beyond the testimony, the jury watched multiple dash-camera videos showing how Appellant responded once the officers activated their lights and siren behind him. We

5

hold that against the full record, the exclusion of Cheak's testimony did not have a substantial or injurious effect on the verdict or Appellant's rights. *See King v. State*, 953 S.W.2d 266, 271–73 (Tex. Crim. App. 1997); TEX. R. APP. P. 44.2(b). We overrule Appellant's first issue.

Prior Convictions

In his second issue, Appellant argues the trial court erred by allowing the State to impeach him with two prior convictions for evading arrest. We review that ruling for abused discretion, giving the trial court wide latitude. *Coleman v. State*, 577 S.W.3d 623, 637 (Tex. App. 2019); *Schmidt v. State*, 373 S.W.3d 856, 862 (Tex. App.—Amarillo 2012, pet. ref'd). We will find an abuse of that discretion only when the ruling falls outside the zone of reasonable disagreement. *Coleman v. State*, 577 S.W.3d 623, 637 (Tex. App. 2019); *Schmidt*, 373 S.W.3d at 862.

Texas Rule of Evidence 609 permits a party to offer evidence of certain criminal convictions to attack a witness's character for truthfulness under limited circumstances. The Rule does not admit the conviction as substantive proof that the witness committed the charged offense. TEX. R. EVID. 609(a); *Theus v. State*, 845 S.W.2d 874, 879–81 (Tex. Crim. App. 1992); *Pierre v. State*, 2 S.W.3d 439, 443 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

The Rule does not treat all convictions alike. It draws a line at ten years, measured from the later of the date of the conviction or the date the witness was released from confinement; a higher standard is assigned for convictions older than a decade. For a conviction falling within the ten-year period, the evidence is admissible if its probative

value outweighs its prejudicial effect to a party. TEX. R. EVID. 609(a); *Theus*, 845 S.W.2d at 880; *Meadows v. State*, 455 S.W.3d 166, 170–71 (Tex. Crim. App. 2015). Convictions older than ten years are admissible only if their probative value, supported by specific facts and circumstances, substantially outweighs any prejudicial effect. TEX. R. EVID. 609(b); *Meadows*, 455 S.W.3d at 170–71.

In the present case, one conviction for evading is more than ten years old. The record does not establish when Appellant was released from confinement on the June 2014 evading conviction, but the parties do not dispute that both should be treated as remote. We therefore assume, without deciding, that both convictions are remote, and apply to each the more demanding standard that Rule 609(b) reserves for remote convictions. The question, then, is whether the probative value of the convictions, supported by specific facts and circumstances, substantially outweighed their prejudicial effect. TEX. R. EVID. 609(b).

We look to the Texas Court of Criminal Appeals' non-exclusive list of factors to guide our assessment:

> (1) the impeachment value of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense and the witness' subsequent history, (3) the similarity between the past crime and the offense being prosecuted, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue.

*Theus*, 845 S.W.2d at 880. No single factor controls, and the analysis cannot be performed with mathematical precision, because "several of the factors relevant to assessing probative value themselves cut in different directions . . . ." *Id.* (quoting M.

Graham, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6513 (Interim Edition) at 65–66).

The Court of Criminal Appeals in *Theus* also offered guidelines for how these factors apply. For example, it has observed that a crime of deception, rather than violence, carries greater impeachment value and less risk of unfair prejudice; the first factor would better favor admission when the prior crime involves deception. *Id*. at 881. The second factor favors admission when the prior crime is recent and shows "a propensity for running afoul of the law." *Id*. The third factor, by contrast, weighs against admission when the prior conviction and the charged offense are similar. *Id*.[3] The fourth and fifth factors move together; "both depend on the nature of a defendant's defense and the means available to him of proving that defense." *Id*. When a case reduces to the testimony of the defendant and the State's witnesses, the importance of the defendant's credibility rises, and with it "the need to allow the State an opportunity to impeach the defendant's credibility." *Id*.

Applied in this case, the factors do not all point one way, but on balance they support the trial court's ruling in admitting the convictions. Regarding the third factor, both prior convictions were for evading arrest, the same offense on trial; that overlap risks inviting the jury to convict due to a perceived pattern rather than on the present evidence. *Id*. at 881. Temporal proximity, the second factor, does not aid the State either, in light of the parties' implicit agreement that both prior convictions are at least a decade old.

---

[3] "The rationale behind this is that the admission for impeachment purposes of a crime similar to the crime charged presents a situation where the jury would convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense." *Id.* at 881.

8

The remaining factors, however, weigh toward admission; the fourth and fifth carry particular force. Because Appellant does not dispute that he kept driving after the officers signaled him, the only live question was his mental state and whether he knew the signal was meant for him. The answer rested largely on Appellant's own account of what he was thinking. *Theus* instructs that when the contested element turns on the defendant's own credibility, the State's need to test that credibility is at its highest. *Id.*

The Second Court of Appeals, from which this appeal was transferred, addressed this very principle in *Meadows v. State*, No. 02-12-00643-CR, 2015 Tex. App. LEXIS 4486, at *2–3 (Tex. App.—Fort Worth Apr. 30, 2015) (mem. op.) (not designated for publication). *Meadows* was an aggravated robbery case in which the defendant admitted he was the masked man shown on video entering a restaurant with an object in hand but testified that the object was a water nozzle spray gun rather than a pistol and denied threatening anyone. *Id.* at *1. Although the defendant's prior theft convictions were more than ten years old and resembled the charged offense, the court held that the trial court properly permitted the State to cross-examine him during the guilt-innocence phase with evidence of those convictions. He was the only defense witness, the court explained, making his credibility "paramount." His account that he intended theft rather than robbery presented the jury "with a credibility issue to resolve." *Id.* at *3. The court therefore affirmed, holding that the trial court did not abuse its discretion in finding that the probative value of the convictions substantially outweighed their prejudicial effect. *Id.*

Finally, the type of the previous crimes rounds out the balance. Appellant's former convictions were not for violent crimes, so they carried less of the unfair prejudice that

9

violent offenses can produce.  *Theus*, 845 S.W.2d at 881.  The central dispute was not whether Appellant committed the act, but that he knew what he was doing.

Appellant's guilt turned on whether the jury credited his account of what he believed when the officers signaled him to pull over.  On that question, the trial court could reasonably conclude that the probative value of the convictions, supported by the specific facts and circumstances of a case that hinged on Appellant's own credibility, substantially outweighed the danger of unfair prejudice.  Giving the trial court the wide latitude this ruling demands, we cannot say that conclusion fell outside the zone of reasonable disagreement.  *See* TEX. R. EVID. 609(b); *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Theus*, 845 S.W.2d at 881.  We overrule Appellant's second issue.

## CONCLUSION

Having overruled Appellant's issues, we affirm the trial court's judgment.

Lawrence M. Doss
Justice

Do not publish.

10